The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. All right. Thank you. Good afternoon. This case is case number 4-22-0409 Professional Solutions Insurance Company v. and I'm not sure of the pronunciation, Karuparthy et al. For the appellant, could you please identify yourself for the record? Good morning, Your Honor. Good afternoon. Jason Jockum, J-O-C-H-U-M, on behalf of the Appellate Professional Solutions Insurance Company. All right. And then for the appellee's counsel, if you could identify yourselves. Sure. I'm Brian Hetzer, H-E-T-Z-E-R, on behalf of the appellee, Nancy Corellis. And John Malvick of Winstein-Kavinsky in Cunningham and Rock Island for the appellee's, Dr. Karuparthy, and Integrative Pain Centers of America. All right. Thank you, counsel. Mr. Jockum, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the court. My name is Jason Jockum. I am one of the attorneys who represent Plaintiff Appellant Professional Solutions Insurance Company. Before I proceed, I'd like to reserve eight minutes total for rebuttal time. That will be fine. We are here today to ask this court to reverse the decision of the 14th Judicial Circuit. There is no question that based on well-settled Illinois law, after Dr. Karuparthy pled guilty to crimes of assault and reckless conduct in the criminal case that he admitted in his answer, arose out of the same transaction or occurrence that gave rise to the Corellis lawsuit, that Professional Solutions owed no further duty to defend him based on the policy's exclusions and the insuring agreement. At that time, there was no doubt that coverage had been excluded. The circuit court's finding that Professional Solutions owed a duty to defend after he pled guilty in the criminal case based on negligence claims by Ms. Corellis and her underlying case complaint was an error. Counsel, I have a question. Mr. Jockum, is that pronounced correctly? It is, Your Honor. Thank you. Mr. Jockum, why doesn't this record before us contain the charging instruments to which the doctor pled guilty and also the proceedings from the guilty plea period? Well, Your Honor, it does contain the conviction in the record and the appendix that was included as attachments to the complaint. It also, we did include the charging document in the appendix. It is a matter of public record. The court can take judicial notice of it. Why was it included in the trial court record so it's before us appropriately on appeal? It was not requested by the trial court, Your Honor. It was not included in the record. What about the reported proceedings of the guilty plea hearing? As far as we are understood, Your Honor, that was just a prove up on the hearing. It was that he had pled guilty. Well, Counsel, you're the appellant. This is a pretty significant case. The circumstances of the guilty plea, what he pled to and why and how are pretty important here. I just want to express my concern that as opposed to having us make inferences and maybe even guesses, it seems to me your burden was to provide us with as complete a record as possible. Well, Your Honor, it would have been true. That might have been true. But Mr. Dr. Karaparthi, in his answer, admitted that the criminal case arose out of the same transaction or occurrence as the allegations from Ms. Corrales' lawsuit. So there's no question that he pled guilty to actions that arose based on what Ms. Corrales had alleged in her suit. And he pled guilty to assault as well as reckless conduct arising out of those allegations. So there is no question that he did plead guilty to crimes arising out of the allegations from Ms. Corrales' lawsuit. And therefore, I would agree with Your Honor that it probably would help to have that. It's not necessary for this court's consideration because we know what he pled guilty to as far as he pled guilty to crimes arising out of those allegations, which are battery, assault, intentional infliction of emotional distress and false imprisonment. What if he had pled guilty to theft, but that arose out of the same events? Would you be able to say the same thing here? Your Honor, it's possible that I couldn't say the same thing, but he pled guilty to an assault charge and a reckless conduct charge, which are clearly related to. In fact, he admitted again, he admitted he arose out of the same transaction or occurrence as the allegations in Ms. Corrales' lawsuit. There's no question that assault and reckless conduct would bear with the charges of assault, battery, I.I.E.D. and false imprisonment that were alleged by Ms. Corrales in the underlying suit. So you're saying we don't need the factual basis in order to see or determine whether the acts were intentional or negligent? Well, Your Honor, we actually don't even need to get that far. While there is an intentional and malicious acts exclusion, that's exclusion 10 to the policy, there's also exclusion number one. Exclusion number one to the policy is simply a criminal acts exclusion. And it states that the policy does not apply to any damages, incidents, claims or suits arising out of, based upon or attributable to an act or omission violating any federal or state statute or any county or municipal ordinance governing the commission of a crime. There is nothing in exclusion one that requires intent. It doesn't say anything about intent. The court in DOMS interpreting a similar criminal acts exclusion that did not require intent, in fact, made note of that and distinguished other cases that did have policies that required intent have been shown. And that's one of the trial court's principal errors in this case. The trial court relied upon Curioto, Allstate Insurance Company versus Curioto, as part of its decision. And we all know that Allstate, Curioto says that intent, you know, pleading guilty is only prima facie evidence of an intent. It is not conclusive. However, Curioto dealt with an intentional and malicious acts exclusion clause. This is a pure criminal acts exclusion clause. No intent is required. And that is why Curioto is not applicable to this matter. In fact, it doesn't even rely upon the same type of clause or same exclusion for why coverage was excluded. And in fact, the DOMS case is specifically on point in this matter. The DOMS case, the policy clause that excluded coverage stated bodily injury or property damage arising from any criminal act. And then it defined criminal act as any act or omission which is criminal in nature for which a penal statute or ordinance permits or requires any term of imprisonment or sentence or public service duties. And it stated that the coverage was excluded even if the insured was not convicted of a crime or whether he actually intended bodily image or property damage. Here we have the same clause. The DOMS courts went through the clause, they went through the underlying acts, and they went through both the pre and post conviction of the underlying case. Because in that case, the defendant had been charged with attempted, excuse me, assault and attempted murder and for trying to beat someone over the head with a baseball bat. And the plaintiff had pled both intentional and negligence claims against the defendant. The court found that up until the guilty plea by the defendant, that the insurer had a duty to defend. And that is exactly what Professional Solutions did in this case, up until Dr. that arose out of the same transaction or occurrence as the allegations from Miss Corrales. We defended. Was right there comes let me ask you is the fact that you defended the doctor up until the time he pleaded guilty mean that you were thereby abandoning any claim that his conduct, aside the criminal exclusion wasn't sufficient for just general coverage under the policy. No, Your Honor, we in fact we defended under a reservation of rights, with regards to that, but there was no we did not. We did not waive any arguments regarding the defense of Miss. We simply followed the well settled precedent from the DOMS case which says, up until there's a criminal conviction. There's at least a possibility that the allegations may not be true there's a possibility that he did not commit these intentional acts. There's a possibility didn't commit these criminal acts. So, up until that point, you don't, you, there's a potential for coverage, and therefore there's a potential for a duty to defend. On that basis, the police seem to have argued in the trial court seems to accept the notion that somehow, by having attended an offense. Initially, you were stopped from subsequently claiming that his conduct was excluded from coverage. My corrected map. I don't believe that's exactly what they're stating, Your Honor, but we would wholeheartedly disagree with that. In fact, the DOMS case specifically stated, and it found that the insurer had a duty to defend up until the, the criminal conviction of the insured in the underlying criminal case, and then after that conviction, the insurer had no no longer had a duty to defend. And in that this case we follow these professional solutions follow the same exact process that DOMS instructs insurers to do when we have these types of situations that occurred. Mr jock them before talking about exclusions I think first has to be addressed, whether or not counts five and six actually plead professional negligence, because if they do adequately plead professional negligence Do you agree that the exclusions that you've identified don't come into play. We would not agree that the exclusions do not come into play, even if there are allegations of professional negligence. The court has to, and I'll explain I'm sorry Your Honor, the court has to take the, the allegations as a whole. And also, Miss Corrales is collaterally stopped by the guilty plea in the underlying case now counsel, just hold on a moment. If counts five and six are determined to adequately plead professional negligence, you're saying somehow collateral estoppel comes into play, or somehow the exclusions come into play. Can you explain that. Yes, let me explain a little better, Your Honor. Well, in, for instance, in this court's decision in acres. The plaintiff pled both negligence claims and an intentional claim. And one, and there was a conviction of the defendant in the underlying case. At that point, whether or not the plaintiff pled negligence claims was immaterial. The court had determined the underlying court had determined that there was a criminal act, and there was coverage that had been excluded from the policy. I say I think what what you're doing right now, and, and I, and I understood this from your brief as well. You're equating the conduct that's alleged in the other counts one through four, with the conduct that's alleged in counts five and six, you're saying it's the same conduct. It's just simply a different title of being assigned to those counts. Correct. I would agree with that, Your Honor. Okay. Here, though, counsel. If one were to disagree with you, and to say that counts five and six actually plead conduct, other than the criminal acts that are pled in the remaining counts. So therefore you have different conduct in counts five and six being alleged, then are the exclusions that you've been referring to relevant or irrelevant. They are relevant, Your Honor, and they still do apply to bar to bar coverage of the underlying claim. How, and again that is that is based on the anchors decision Your Honor and numerous decisions before that. Once you have counsel familiar with the acres decision. That was a very simple fact scenario it's a car, car crash. And so you don't even have the potential for interpreting the complaint is alleging some separate act, it was the car crash here. What you have is you have and let's just get right to it, because I think you're going to run out of time. Otherwise, in count five, you have. Well, in order to prove professional negligence you have to prove what the standard of care required a breach of the standard of care proximate cause and damages correct. That is true, Your Honor. Yes. Okay. And here in count five, it's alleged standard of care and a breach of standard of care, the breach of standard of care is alleged in count not or in paragraph nine of count five, and very specifically in sub paragraphs, a through D, there are four acts of omission that are identified as the breaches of from the standard of care correct. There are your honor yes okay and those are not contained in the remainder of the complaint is that right. They are not your honor, they are their conclusions yes approximate causes then alleged in paragraph 10, and then in paragraph 11 of count five plaintiff in the underlying action alleges the various damages. Is that right. I would agree that that's what's alleged your honor I again I we disagree that that would be a negligence claim. And why is that. Well, Your Honor. Number one, the allegation obviously the allegations, when we're reviewing this on a duty to defend the, we have to interpret the entire document, the entire complaint plaintiff is simultaneously alleging that the doctor injected her with a substance that made her unable to move unable to resist and that he was able to assault her. And then simultaneously she's alleging, well that was actually a breach of the standard of care. Because where does she say that here that simultaneously she's claiming that he assaulted her in paragraph five. Well, if your honor if you're looking at in paragraph five of count five and six no it does not. But again, we can't just consider the complaint in one count by one count the complaint. Why not. Well, Your Honor. It's, we have followed the eight corners rule where we consider the allegations the complaint in their totality. We have to 622 report that identifies separate violations of the standard of care one having to do with the injection of a steroid. In the, the thumb without correlation by way of x ray and then also the manner in which ketamine was injected. So, you have the to 622 report that is very specific as to separate claims. Apart from any claims of assault. Correct. Well, Your Honor, the 622 affidavit is not part of the complaint. Your Honor, I would direct the court to Garrison versus child. It's a first district case of the 622 affidavit is not part of the complaint. It is, it is merely a technical requirement that must be satisfied. It is not part of the allegations of the complaint, and therefore that's different. Saying that it's not part of the allegations of the complaint. The to 622 report is an exhibit to the complaint, and in a complaint for declaratory judgment, you consider the exhibits to the complaint along with the complaint itself so we most certainly may consider the to 622 report here. Respectfully, Your Honor, even if the court does this, there's, we cited to the professional solutions versus jealous case. This, I understand it's a northern district case, but the court there again. This is not Miss Corrales is included a negligence claim to try and get a case within the realm of scope of scope of possibly being under the duty to defend. Well you're putting yourself in her head, and you may be absolutely right. At some point, when push comes to shove and you actually obtain by way of an interrogatory that served on her, or a request for a bill of particulars, which I think probably should have come at some point here, where you asked what is it that's being alleged as an injury or damages in count five. Now, it perhaps he's alleging that that is a there is a thumb injury, or there's some injury that's relating to how the ketamine was administered. We just don't know that because in paragraph 11 of the count five. It's a very generic suggestion as to what the damages are, but we don't know that. I would agree, Your Honor that we don't know that, and I believe that would, again, based upon the court stick to in professional solutions versus jealous. That's a doctor assaulting his patient is not generally considered to be medical treatment. Let me give you a hypothetical counsel. Let's say that you have a surgery abdominal surgery on a female, the anesthesiologist is at the head of the bed, administering the anesthesia there is a curtain separating the surgical team from the anesthesiologist. During the course of the surgery. The anesthesiologist gropes, the, the patient. Also during the surgery, he's not paying attention. She suffers a decline and her oxygen levels suffers an anoxic brain injury, your retrievable brain damage. That entire course of events yields two different types of claims. You've got the assault, or the battery that occurred. You also have a medical malpractice case, resulting in the anoxic brain injury. Now I'm not saying that's what you have here but we just don't know because it looks to me that there is sufficient allegations here and count five to separate it from the assault and battery counts that are also alleged. I know you're out of time but if you want to answer that you may. I would like to answer it, Your Honor, and Your Honor you already answered part of the question I was going to answer with. That is not the case that we're presented with here in under your honor situation I believe it will be a much tougher call as to whether or not there was a duty to defend because we're talking about two entirely different acts that occurred at separate points in time that one was a an intentional act to harm the plaintiff, and the other was a negligent act that occurred later. Here we're talking about the same act. We're talking about the same injection. He injected her, it rendered her immobile. She was unable to move. He then assaulted her body intent with by her own allegations with intent. He kissed fondle grabbed her touched her. And, and again, that's what we have as far as the allegations. So, while your honors hypothetical, I think would be a much more difficult question. I do believe that the, we do believe that the situation presented here is far simpler in that it's the same act that's being alleged to have occurred, both as part of the assault, and as part of the negligence claim. And essentially it cannot be both, it must be either one or the other, and Dr. McCarthy's guilty plea. Again, two crimes are rising out of the same allegations as Miss Corrales is alleged. All right, Mr jock I'm sorry if you are out of time you'll have time and rebuttal. Sir, are you going to argue first. Yes, I am your honor. All right, you may proceed. Thank you. May it please the court, the primary issue that's before this court is whether or not the duty to defend applies to the underlying complaint that Miss Corrales filed. And the trial court properly followed Illinois Supreme Court precedent in granting Corrales's motion to dismiss and requiring the duty to defend the Supreme Court case law is clear that if just one count potentially falls within coverage, then the duty to defend is triggered. PSIC concedes that its policy covers negligence claims. Even so, arising out of the same acts I guess that's the focus here. That's what opposing counsel argued that because it. And because it's conceded by tenants that arose out of the same acts that there cannot be two separate negligence claim. Apart from the intentional act. It's our contention that they are separate acts. She did have an appointment that day, and the allegations of negligence that were covered in the 62 report, including the improper diagnosis, lack of informed consent improper medication for the treatment plan and administering medication and appropriately inappropriately all happened before the allegations of intentional touching or fumbling that's described in the complaint, they are completely separate. But wasn't it to the same end. In other words, those were administered and those acts in order for the physician to batter and assault the patient. At this point we don't know that without further discovery. And at this point, based on you say we don't know that it seems to me that you'd have to be an idiot to so conclude, we don't know that. Well, they can be two separate two separate individual acts, but then also we don't have information from the criminal conviction, and the facts that are indicated in the criminal conviction, or counsel before you go there. If the damages are identical, and you've just pled them in some different way but if you're claiming and five and six, that the injury was the assault by car apart the you're out of luck. You've, you've alleged the same damages that are also alleged and counts one through four, that you're then stuck with that being a criminal act. So, are you going to be able to identify damages or an injury and counts five and six that are different than that. With respect to the damages that would go to the duty to indemnify at this point in time, without further discovery that has happened in the underlying counsel, I'm just going to say, if you are alleging the same damages. Then you and you haven't done it here because you obviously use different wording, but I would submit to you that the duty to defend as well would evaporate because you have essentially admitted that it is the exact same conduct the exact same event. And that is a criminal act. Now, at this point, you have asserted that you're talking about separate conduct that the assault occurred later, and that the conduct that said issue and five and six was what preceded that the various things that are identified in the 2622 report, and that in paragraph nine of count five, you talk about, but what are the damage what what what injury occurred there if you have no injury, relative to those exact allegations. I think you're stuck. Well, the injuries, we further elaborated on the discovery and the underlying personal injury action and the injury in and of itself when Dr. described in the 622 left the room. Miss Corrales actually went into cardiac pretty darn close to cardiac arrest. And when plaintiff pled the negligence allegations and the intentional tort allegations. This state allows and not only not only allows but also encourages pleading in the alternative. Council 10 years ago in the dinner case this court wrote the following and determining whether insurance company has a duty to defend courts are not required to tell us I was not to consider each count in isolation and ignore facts pleaded in other accounts. Why, when we're trying to determine what's really being alleged here. Shouldn't we consider each count of a plaintiff's complaint to inform ourselves what's essentially being alleged here, and whether these negligence counts really in fact exists, aside from the criminal conduct that you alleged the first four counts. Well, the Supreme Court case that the trial court relied upon was the one that specifically indicated that if just one count potentially comes within coverage, then the duty to defend is triggered. And that Supreme Court case law is still good law in the state of Illinois. And so, when Corrales pled a valid negligence claim in this case, then the duty to defend arose, and the trial court properly granted the plaintiffs motion to dismiss circumstances of the Supreme Court case you make reference to have nothing to do with the circumstances here, there's nothing close to the allegations in this case which I'm a clear reading make it obvious that the doctor. This was not a crime of opportunity, as might be the anesthesiologist and Justice Harris's assessment this was what he intended to do and how he intended to do it, and why he intended to do it, and he did it. Well, I think that's something that would be further elaborated on discovery in this particular case, because she had an appointment that day, there is a medical record for that day for the treatment that she received. That's why he was able to prey upon her. He was a doctor and she mistakenly went to him for treatment, and he acted upon her to make it so that she was unable to deal with his sexual assault. Well, I would guess, I would guess that he probably saw multiple patients that day. And so, his behavior with regard to her. Right. Well, I'm just wondering how we can look at the allegations and the first four counts and apparently your position is, if I understand it correctly correct me if I'm wrong, is an evaluating five and six were required, like the trial court to ignore them. Is that right. I don't, I don't think you have to ignore them instead you look at one count says has a tort claim. The other four that talk about the same conduct, though, in a criminal context, we're supposed to ignore. I would submit to the court that they do not talk about the same conduct. Are we supposed to ignore them Council. No, I don't think you are supposed to ignore them you're going to give them and how do we consider them and evaluating counts five and six. Well, you look at each count individually to determine whether or not they would be excluded under the policy and counts five and six alleging negligence counts would not be excluded under the polls, we're supposed to ignore the allegations accounts one through four. In order to determine the duty to defend you just need one of the counts. Is that a yes policy. I'll repeat my question I was, are you telling this court that we're supposed to ignore the allegation counts, one through four as we evaluate counts five and six. Once you determine that one count falls within a yes. Yes. Okay, I want to make sure what your position is. And that is despite the admission and the answer that the acts arose out of the same transaction or occurrence. Well, with respect to the defendants answer. At that point in time, he was represented by Council who was retained by PSC, and it's an interesting position that they're making that it's not a negligence claim when they admitted, or they answered that complaint and thereby waived any sort of argument now that it's not a negligence complaint. Because they answered the complaint. Council I don't understand how your client was able to get judgment as a matter of law. In this case, when it isn't at all clear as to what your client was claiming and the underlying medical malpractice case and counts, five and six in the way of an injury. Is it the same injury or different injury from the, the injuries alleged in the other four counts, that being the injuries resulting from the assault. So, how, how was it that you are entitled to judgment as a matter of law in that complaint for declaratory judgment. I don't understand how on this record. Either request for judgment on the pleadings could have been allowed. Because the allegations in the complaint meet the prima facie case for a negligence claim. And so that's why it was proper for the trial court that once she realized that there was a proper prima facie case met. Then it fell within coverage and it triggered the duty to defend. Nothing in the council there's nothing in the complaint that reflects that the damages and counts five and six are different from the damages and counts one through four, and if they're alleging the same damages. If that's actually what's happening here, but it's just not been clarified, then your, as I see it, your clients negligence claim is nothing but a regurgitation of the battery claim and the assault claim, but we just don't know that, because it's not clear from the, the pleadings themselves what the injury is that's being alleged with respect to. And counsel, you. I don't think you can answer this, because we can only go by what's in the pleadings here, and the attachments to the, the pleadings, but was there any discovery conducted. No. Okay. So what we have here. That's it. What was attached to the, the complaints in the way of exhibits that's it. Yes. Council on that subject. There was some discussion about the section to 622 affidavit. And is your position that that's something which supports your claim and something which the trial court this court should consider regarding the complaint for declaratory judgment. Yes, absolutely. I disagree with Mr joke I'm indicating that the 62 report is not part of the complaint. It's a procedural requirement. Let me mention this court. Few years ago, dealt with a medical malpractice claim out of Bloomington, where in support in opposition to the defendant hospitals motion for summary judgments, the plaintiff cited the to 622 affidavit, which he had presented to the court as required for his medical malpractice complaint. And this court said explicitly and emphatically that it has no role. It's not evidence, it failed to meet entirely the standards of rule 191, a, which is the requirement for affidavits to be considered in summary judgment matters, and said it's limited to its purpose of something to present to the court to demonstrate that this wasn't a bogus lawsuit. And that's it. Given what this court wrote about to 622 affidavits. In that case, a few years ago, why should it be given any weight, or any consideration with regard to your claim that there is something more here going on, there are some additional factors beyond the complaint itself. Well, I understand that a 622 would not be evidence per se. However, it is a procedural requirement in order to file a medical negligence complaint in the state of Illinois. If the defense would file a 615 or 619 motion to dismiss this court, or the underlying court the trial court would consider the 622, along with the allegations in the complaint to see if there were sufficient allegations made. So, I'm sorry you're out of time I know you were answering a question there at the, the end of the fourth quarter but that was it. Mr Malik. You have six minutes I believe. Yes, Your Honor. Thank you. If it please the court. The allegation in the declaratory judgment action that has been referred to by Mr jackham and the court as being in admitting that it arose out of some, the same transaction. I'm going to read that to you. We admit or admit that a criminal complaint was filed, but claim that the criminal case arose out of the same transaction or occurrence that gave rise to the Corrales lawsuit suit, rather than that it is quote, based on the same events that gave rise to the Corrales lawsuit unquote so we did not admit that it gave rise. Or that it was based on the same events that gave rise to the Corrales lawsuit. The same are you saying there. So, what is the difference. What were you saying what's the difference. The same transaction or occurrence is an office visit for treatment. That's what she went. She went there for, and that was the transaction or occurrence, out of which the events arose. And that's, that's not a distinction without meeting. The. They wanted Dr McCarthy to admit in their, in their complaint that it was based on the same events. And it wasn't, it was based on the same occurrence that there was an office visit for treatment. Well Council English is my mother tongue, and I have trouble distinguishing between those two in this and making any sense at all that they're different. And if you wanted to make it clear that it had nothing to do with these underlying charges, you certainly could have stated it differently than that, if that was your intent. That. Well I think reasonable minds can differ on that point. The other thing is the council I have a question, how were the doctor's acts, not outside of the definition of professional services here, which acts are you referring to your honor, the acts in which he assaulted her. Okay, so that's counts one, one through four medical of the underlying lawsuit. So again you're separating those from count five and from count five and six. Now, Dr McCarthy has denied the allegations of in in those counts in his answer in the underlying lawsuit. And in the answer to the declaratory judgment. We have denied that those things occurred. I didn't represent them in the underlying lawsuit. As Mr Hatcher pointed out, PCI PS. I sees panel council represented him in the underlying suit up to the time that they decided that there was no coverage. Do you dispute the doctrine or the statement of a doctor's sexual misconduct with a patient is not medical treatment. I do not dispute that that is not medical treatment and Dr McCarthy denies that he did those things, but pleaded guilty to something arising out of the allegations accounts one and four. Okay, so originally Dr McCarthy was charged with two felonies. That's him. That's in the record that he was charged with aggravated are not aggravated with criminal sexual assault. That's in the record. He did not plead guilty to that. They file, there's two amended counts. One is assault a class C misdemeanor which doesn't involve doesn't have to involve touching at all. It's an intentional crime. True, true. And the that is assault isn't is a specific intent crime and reckless conduct is not a specific or general intent crime crime, and he reckless behavior. And if, if those guilty pleas are based on the same conduct, they're legally inconsistent per the Broderickson case which I cited, you cannot, you cannot be convicted of reckless conduct and general intent crime for the same conduct. So you're going to advise the doctor to file a motion to set aside his conviction. No, because we don't know what they're doing is that they're inconsistent counsel what's the weather with, with all due respect, Your Honor, we do not know what the facts of the criminal in the record for either assault or reckless conduct for us to even know what the charge was about. And I'm not going to assume anything I didn't represent them in the criminal case, I didn't represent them in the underlying lawsuit, I'm representing them in the declaratory judgment action, and it's incumbent on PSI see to present this court with a record that they can determine those matters from and do an analysis under certificates, there's nothing in this record that allows this court to do an coverage. The same question I asked Mr. That's this. And that is in determining whether or not the insurance company is a duty to defend. Can this court consider the first four counts, when we're evaluating the last two counts five and six to assess what's the complete package here. Okay. So, question, Illinois is not a notice pleading jurisdiction it's a fact pleading jurisdiction you're required to plead separate counts for each claim that you have. So, you can look at the complaint as a whole. And, and you can say well I don't think there's any coverage under counts one through four, but as Mr Hudson pointed out, if you find that there's coverage under either count five or count six or both of them. There is a duty to defend, let me ask the question one more time see if you give me an answer. Should this this court required to ignore counts one through four. When we evaluate counts five and six. I wouldn't phrase it exactly that way but I'll answer your question. Yes, you. Okay, well you posed it. Yes. Okay, thank you, Mr Malik. You're out of time there Mr jock them you have rebuttal argument. I do your honor I just have a few points I'd like to raise on rebuttal. First, I'd just like to point out that the doctor car party and integrative pain management. They did not file a motion or any response in the circuit court, they made no arguments and in fact with regard to professional solutions motion for judgment on It's the record will indicate they adopted the arguments that were advanced by Miss Corrales at the hearing before the trial court. So the arguments that have been raised by counsel today. Simply, they weren't brought before the trial court they were not in circuit court, and it's our position that they have forfeited them on appeal by not making such arguments before the circuit court. Brief, I think it was in your reply brief or maybe it was in, I think it was in your original brief your opening brief as an alternative argument you said that if the case goes back. You should be allowed to proceed with discovery. Or you request that it go back for discovery. Is that right. That was a third argument. Yes, your honor. And that was simply because in your honor has pointed out that there are some some factual issues here, and even the, the trial courts ruling based on intent or the carry out to a case. It really should not have been decided on a 619 motion that was filed by Miss Corrales. If the court deemed that the, you know, the court said, again, intent is a question of fact, that's what it was actually in the circuit courts ruling, and that yet the circuit court determined on a 619 a nine dispositive motion that PSC had a duty to defend in the underlying case. In that case, the, the circuit court simply did not follow the correct standard. The circuit, essentially, Miss Corrales attached the complaint, and her 622 affidavit as exhibits to her motion for dismissal pursuant to 619 a nine. What's, what's happened to the underlying complaint, the medical malpractice complaint, is everything on hold. To the best of my knowledge, yes, your honor, but I will be honest, I do not know obviously we're coverage council. We are not involved in the underlying case. Okay, thank you. But the court, simply, even on that third argument the 619 argument, the court applied the wrong standard, it, it gave it did not take all inferences against the moving party, which in this case would have been Miss Corrales. In fact, it gave inferences towards Miss Corrales and ruled on a misnomer 619 motion improperly. I would also note that counsel's attempt to try and clarify paragraph. Mr. Dr. Carp are these answer is just a tortured reading of what he stated. There is no possible way that that can be in any way reconciled with this case. Counsel for Miss Corrales stated that that that answer was actually provided the underlying case. It was not that answer was provided in this case was actually on page C 108 of the record, paragraph 16. So, just wanted to correct that as that assertion. Also, Your Honor, Justice segment statement you talked about the stigma, my apologies, Your Honor. You spoke about the dinner case, and it is our position the court cannot just consider one count on its own as to whether or not the states of negligence claim the court has to consider the complaint as a whole and whether negligence is truly alleged. And we can't just ignore the fact that Miss Corrales is alleged that Dr. Carparthy injected her with something that knocked her out and then he assaulted her person to do so would would do an injustice to whether there was a duty to defend in the underlying case. That's fun counsel to the fact that she had an appointment that day for something, some sort of medical procedure medical issue that she had. Your Honor, I would agree that she, she did have an appointment that day. However, whether or not she had an appointment has no bearing on whether or not the doctor injected or was something and took advantage of the situation, and was able to inject it was obviously there was a criminal conviction, but to take advantage of the situation to assault her body and her person. Can you say based on these pleadings that the defendant doctor did not cause physical harm as a result of his medical care. Your Honor. The allegations regarding the mental care. There are no damages, particularly alleged to that I mean the, and I see that I'm out of time I'd like to answer. Again, as the, as the professional solutions versus Joelist case stated, the plaintiff isn't suing to for sloppy record keeping, or, you know, miss or misdiagnosis or failure to gain informed consent she's suing because he assaulted her person. There are no, she hasn't alleged any specific damages, other than the damages arising out of the assault. And in that case we believe that the assault and the negligence are the same act and therefore there was no duty to defend, based upon his admission and his case will be taken under advisement and a written decision will be issued.